**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Srinivas Kompella, et al., | No. CV-20-00190-PHX-DJH |
| Plaintiffs, | **ORDER** |
| v. | |
| United States Citizenship and Immigration Services, | |
| Defendant. | |

This is an action brought under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq.  On January 10, 2018, Defendant United States Citizenship and Immigration Services ("USCIS") denied Plaintiffs Srinivas and Lakshmi Soudha Kompella's ("Plaintiffs") I-485 applications to adjust their status to lawful permanent residents ("LPR Applications") ("**January 10, 2018, LPR Denials**").  Plaintiffs now ask this Court to review the lawfulness of these denials.

Pending before the Court is Plaintiffs' Motion for Summary Judgment (Doc. 51) and Statement of Facts (Doc. 52).  Defendant filed a Response (Doc. 54), and Plaintiffs filed a Reply (Doc. 55).[1]  Neither party requested oral argument, and the Court finds the matter can be disposed on the briefing.

/ / /

/ / /

---

[1] The Certified Administrative Record (hereafter "AR") for this matter, which includes the administrative record for both Plaintiffs, is filed on the docket in four parts: Docs. 46, 47, 48 and 53.

## I.    Background Facts

### A.    Immigrant Petitions for Employment-Based Green Cards

The Immigration and Nationality Act ("INA") provides that a certain number of immigrants may apply for green card status based on an employer's offer of a permanent job as a skilled worker or professional.  *See* 8 U.S.C. §§ 1153(b)(3)(A)(i), (ii).  This adjustment to legal permanent resident ("LPR") status involves a three-step process. First, a United States employer applies to the U.S. Department of Labor ("DOL") for a labor certification by showing that there are no qualified, able, and willing U.S. workers to fill the job and that the alien's employment will not adversely affect the wages and working conditions of U.S. workers.  *See* 8 USC § 1182(a)(5)(A)(i).  Second, having obtained the necessary DOL certification, the employer files an Immigrant Petition for Alien Worker (Form I-140) ("I-140 petition") with USCIS to have the prospective employee classified as an employment-based immigrant.  *See* 8 C.F.R. § 204.5(c); 8 U.S.C. § 1154 (conferring USCIS authorization to grant a I-140 petition).  Approval of the employer's I-140 petition does not itself accord LPR status to the immigrant beneficiary; approval is instead a precondition to applying for adjustment of status.  *See* 8 USC § 1154(e); 8 C.F.R. § 245.1(c).  Based on the approved immigrant visa petition, the third step is that the immigrant applies for adjustment to LPR status ("I-485 petition").  *See* 8 U.S.C. § 1255(a); 8 C.F.R. § 245.2(a)(2)(i)(B).  Under 8 U.S.C. § 1255(a), USCIS has discretion to adjust a non-citizen's status if, among other things, the non-citizen "is eligible to receive an immigrant visa" and "an immigrant visa is immediately available to him [or her] at the time his application is filed."  *See* 8 U.S.C. § 1255(a).

At any point in this process, USCIS, after giving the employer notice and an opportunity to respond, may revoke the approval of an I-140 petition "for what [the Secretary] deems good and sufficient cause."  *See* 8 U.S.C. § 1155; 8 C.F.R. § 205.2(b); *id.* § 205.2(a) (delegating authority to USCIS).  The administrative appeal provision for I-140 revocations under 8 C.F.R. § 205.2(d) states that a petitioner "may appeal the decision to revoke the approval within 15 days after the service of notice of the revocation." 8 C.F.R.

§ 205.2(d).  The Administrative Appeals Office ("AAO") and not the Board of Immigration Appeals ("BIA") reviews these appeals.  If USCIS denies or revokes an I-140 petition, it will also deny any dependent, pending I-485 adjustment of status petition.  *See George v. Napolitano*, 693 F. Supp. 2d 125, 130 (D.D.C. 2010).  There is no administrative appeal process for denial of an I-485 petition by USCIS.  8 C.F.R. § 245.2(c) ("No appeal shall lie from the denial of an application but such denial shall be without prejudice to the alien's right to renew his or her application in proceedings under 8 CFR part 240.").

**B.**     **USCIS's Denial of Plaintiffs' I-485 Petitions**

The following facts are taken from the certified administrative record filed in this matter.  (Docs. 46, 47, 48, and 53).  On April 10, 2004, after receiving the requisite DOL certification, non-party Real Technologies filed an I-140 petition on Mr. Kompella's behalf.  (AR, Doc. 47-5 at 39–81).  The I-140 petition was approved by USCIS on June 23, 2005.  (*Id.*)

On July 2, 2007, based on that approval, both Plaintiffs filed individual petitions to adjust their statuses to lawful permanent residents ("**2007 I-485 petitions**").  (AR, S. Kompella's 2007 I-485 petition, Doc. 46-10 at 42; AR, L. Kompella's 2007 I-485 petition, Doc. 48-5 at 4).[2]  During the pendency of these 2007 I-485 petitions, USCIS provided Real Technologies with a notice of intent to revoke its I-140 Petition.  (AR, Doc. 47-4 at 90–94).  USCIS did not provide Plaintiffs with the notice of intent to revoke.  (Doc. 34 ¶ 18; Doc. 43 ¶ 18).  On August 31, 2012, the USCIS revoked the I-140 Petition that Real Technologies had filed on Mr. Kompella's behalf ("**August 31, 2012, I-140 Revocation**").  (AR, Doc. 47-4 at 76–87).  On September 17, 2012, as a result of that revocation, USCIS denied the Kompellas' pending 2007 I-485 petitions ("**September 17, 2012, I-485 Denials**").  (AR, S. Kompella's 2012 I-485 Petition Denial, Doc. 46-10 at 30–31; AR, L. Kompella's 2012 I-485 Petition Denial, Doc. 48-5 at 2–3).

The Kompellas spent the next several years unsuccessfully challenging USCIS's August 31, 2012, I-140 Revocation and September 17, 2012, I-485 Denials.  (AR,

---

[2] As the spouse of Srinivas Kompella, Lakshmi Soudha's I-485 petition is derivative of his. This Order thus primarily tracks Mr. Kompella's I-485 proceedings.

10/9/2012, First Motion to Reopen, Doc. 46-10 at 8–29; AR, 12/9/2013, Second Motion to Reopen, Docs. 46-8 at 54–106; 46-9 at 1–94; 46-10 at 1–3; AR, 6/5/2014, Third Motion to Reopen, Docs. 46-7 at 13–85; 46-8 at 1–48.  *See also* AR, 11/8/2013, Denial of First Motion to Reopen, Doc. 46-10 at 4-7; AR, 4/23/2014, Denial of Second Motion to Reopen, Doc. 46-8 at 49–53; AR, 1/16/2015, Denial of Third Motion to Reopen, Doc. 46-7 at 7–12)).

On March 14, 2016, the Kompellas filed new I-485 petitions ("**2016 I-485 petitions**").  (AR, S. Kompella's 2016 I-485 Application, Docs. 46-3 at 23–87, 46-4, 1–67, 46-5 at 1-67; 46-6 at 1–75; AR, L. Kompella's 2016 I-485 Application, Docs. 48-3 at 15–16, 48-4 at 1–8).  The 2016 I-485 petitions were denied on July 18, 2016 ("**July 18, 2016, I-485 Denial**").  (AR, Docs. 46-3 at 1–3; 48-3 at 13–14).  In the July 18, 2016, I-485 Denial, the USCIS noted that "since the approval of the underlying immigrant visa petition has been revoked for cause, it cannot serve as a valid basis on which to adjust your status." (*Id.*)

On September 14, 2016, Plaintiffs filed suit in the U.S. District Court for the District of Columbia, alleging that USCIS did not act in accordance with the law when it revoked the I-140 and denied their I-485 petitions, because it did not provide them notice of and opportunity to respond to the Notice of Intent to Revoke the approval of the I-140 petition. (AR, Doc. 47 at 42).  On January 3, 2017, Plaintiffs agreed to voluntarily dismiss that complaint "based on an agreement in which the I-140 proceedings would be reopened, and a new Notice of Intent to Revoke would be issued directly to the beneficiary."  (AR, Doc. 47-4 at 56, 71-72; *see also* AR, Docs. 46-7 at 5-6; 48-4 at 16; 48-3 at 3-4, 53-1 at 10-11). On January 24, 2017, USCIS notified Mr. Kompella that his 2016 I-485 petition was to "be reopened and restored to pending status" in light of the fact that "the underlying Form I-40 petition has been reopened for continued revocation proceedings. . . pursuant to a litigant-based settlement." (AR, Doc. 53-1 at 10).  On February 16, 2017, USCIS provided to Real Technologies and Mr. Kompella its notice of intent to revoke the I-140 petition and Real Technologies' labor certification that was filed in support of the I-140.  (AR, Doc. 47-4 at

54–70).  Mr. Kompella responded and objected to the notice of intent to revoke; Real Technologies did not.  (AR, Doc. 47-4 at 2–35).

On January 4, 2018, USCIS again revoked Real Technologies' I-140 Petition; it also invalidated the labor certification supporting the Petition upon a finding of fraud or misrepresentation ("**January 4, 2018 I-140 Revocation**").  (AR, Docs. 47-2 at 80–91; 47-3 at 1–72).  In that decision, USCIS notified Mr. Kompella of his right to appeal by "filing a Notice of Appeal or Motion (Form I-290B) within 18 days of the date of this decision." (AR, Doc. 47-3 at 72).  It also stated that "[i]f USCIS does not receive a properly filed appeal, this decision will become final."  (*Id.*)

On January 10, 2018, USCIS denied the Kompellas' 2016 I-485 petitions ("**January 10, 2018, I-485 Denial**") on the grounds that the I-140 Petition on which they were based had been revoked.  (AR, Doc. 46-7 at 1–4; Supp. AR, Doc. 53-1 at 2–5).  The January 10, 2018, I-485 Denial concluded by stating, "USCIS regulations do not provide for an appeal to this decision.  However, you may file a motion to reopen or reconsider within thirty days of the date on this decision (33 days if this notice was received by mail)."  (AR, Doc. 46-7 at 4).  The record does not reflect that Plaintiffs filed a motion to reopen or reconsider the January 10, 2018, I-485 Denials.  These Denials are the decisions being challenged in this matter. [3]

Although they did not move to reopen or reconsider the denials of their I-485 petitions, on January 29, 2018, Mr. Kompella appealed the USCIS's January 4, 2018, I-140 Revocation ("**January 29, 2018 Appeal"**).  (AR, Doc. 47-1 at 79–85).  On October 17, 2019, the AAO rejected that appeal as untimely filed ("**October 17, 2019, Appeal Rejection"**).  (AR, Doc. 47-1 at 78) (noting that an appeal of "a notice of revocation [must be made] within 18 calendar days of the date it was mailed").

Over eight months later, on June 19, 2020, USCIS, on its own review, opted to treat the untimely appeal of the January 4, 2018, I-140 Revocation as motion to reopen under

---

[3] Plaintiffs stress they are only challenging USCIS's decision to deny their I-485 petitions at the time it did and that they do not seek a merits review of the decision to deny their I-485. (Doc. 55 at n.3 (noting they "have never claimed that their applications should have been approved").

8 C.F.R. §103.3(a)(2)(v)(B)(2).[4]  (AR, Doc. 47-1 at 49).   On the same date, after a "complete review of the record of proceedings," the USCIS found that Mr. Kompella failed to overcome the grounds for the January 4, 2018 I-140 Revocation ("**June 19, 2020 Denial of Motion to Reopen**"). (AR, Doc. 47 at 40–68) (affirming "the revocation of the petition's approval and invalidation of the labor certification").   The decision notified Mr. Kompella of his right to appeal within 18 days of the decision, and that if an appeal was not timely filed, the decision would be considered final.  (AR, Doc. 47 at 68).   On August 18, 2020, Mr. Kompella filed an appeal of the June 19, 2020, Denial of Motion to Reopen ("**August 18, 2020 Appeal of the Denial of Motion to Reopen**").  (AR, Doc. 46-10 at 72–73).  On July 1, 2020, due to the COVID-19 pandemic, USCIS announced that the agency would accept as properly filed, any Notice of Appeal or Motion that was received up to 60 calendar days from the date of the challenged adverse decision.[5]  Thus, though the August 18, 2020, Appeal of the Denial of Motion to Reopen was filed outside the 18-day deadline, this policy rendered the appeal timely filed.  Defendant represents that as of August 24, 2021, the AAO has yet to issue a decision on the August 18, 2020, Appeal of Denial of Motion to Reopen. (Doc. 57).

Plaintiffs initiated this action on January 24, 2020 (Doc. 1), and subsequently sought a preliminary injunction prohibiting USCIS from withholding their employment authorization during the pendency of these proceedings (Doc. 11).  On August 22, 2020, after this Court denied Plaintiffs' Motion for Preliminary Injunction (Doc. 29) and questioned its jurisdiction over the matter, Plaintiffs filed a Second Amended Complaint ("SAC").  Therein, they argue that the January 10, 2018, I-485 Denials were "not in accordance with law" and should be set aside.  (Doc. 34 ¶¶ 1-2, 52–62).  Plaintiffs specifically argue that the USCIS's January 10, 2018, I-485 Denials are unlawful because

---

[4] 8 C.F.R. §103.3(a)(2)(v)(B)(2) states that "[i]f an untimely appeal meets the requirements of a motion to reopen as described in § 103.5(a)(2) of this part or a motion to reconsider as described in § 103.5(a)(3) of this part, the appeal must be treated as a motion, and a decision must be made on the merits of the case."

[5]  *See*  https://www.uscis.gov/news/alerts/uscis-extends-flexibility-for-responding-to-agency-requests-0 (last updated on July 24, 2020).

1    the decision to revoke the supporting I-140 Petition was not final when the I-485 petitions

2    were denied and so were prematurely and improperly executed.  (Doc. 55 at 6).  Thus, the

3    question before the Court is whether USCIS can lawfully deny an I-485 petition following

4    the revocation of an I-140 petition, but before an I-140 petition's appeal period has expired.

5    **II.      Legal Standards**

6          The APA provides for judicial review of final agency decisions.  *See* 5 U.S.C.

7    §§ 702, 706.  A court reviewing agency action under the APA "sits as an appellate tribunal"

8    to determine the lawfulness of the action under the record before it.  *See Am. Bioscience,*

9    *Inc. v. Thompson*, 269 F.3d 1077, 1083–84 (D.C. Cir. 2001).  Under 5 U.S.C. § 706(2)(A),

10   a court may set aside an agency action, finding, or conclusion that is "arbitrary, capricious,

11   an abuse of discretion, or otherwise not in accordance with law."  *See also Herrera v. U.S.*

12   *Citizenship and Immigr. Servs.*, 571 F.3d 881, 881 (9th Cir. 2009) (applying § 706(2)(A)

13   standard to question of whether USCIS retained authority to revoke approved I-140 petition

14   "at any time" and "for good cause" following Congress's 2000 enactment of job portability

15   statute).

16         "On questions of statutory construction, courts must carry out the unambiguously

17   expressed intent of Congress."  *Natural Res. Def. Council, Inc. v. EPA*, 966 F.2d 1292,

18   1297 (9th Cir. 1992).  "Congressional intent may be determined by 'traditional tools of

19   statutory construction,' and if a court using these tools ascertains that Congress had a clear

20   intent on the question at issue, that intent must be given effect as law."  *Wilderness Soc'y*

21   *v. U.S. Fish & Wildlife Serv.*, 353 F.3d 1051, 1059 (9th Cir. 2003) (en banc) (citations

22   omitted), amended by 360 F.3d 1374 (9th Cir. 2004).  Where the law is silent or ambiguous,

23   the court may defer to an agency's interpretation of a statute, so long as "the agency's

24   answer is based on a permissible construction of the statute."  *Id.* (citing *Chevron*, 467 U.S.

25   at 843.  Agency deference is justified "on the premise that a statutory ambiguity represents

26   an 'implicit' delegation to an agency to interpret a 'statute which it administers.'"  *Epic*

27   *Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1629 (2018) (citing *Chevron*, 467 U.S. at 841).

28   *Chevron* deference is only afforded, however, "when it appears that Congress delegated

authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." *United States v. Mead Corp.*, 533 U.S. 218, 226–27 (2001); *id.* at 230 n.11 ("*Chevron* should apply only where Congress would want *Chevron* to apply."). Thus, this deference is typically only applied to agency interpretations that are the product of "relatively formal administrative procedure[s]" tending to promote "fairness and deliberation." *Id.* at 23.

Agency guidance that is not otherwise entitled to *Chevron* deference and thus not binding on courts may still be influential. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 139–40 (1944) (explaining that a court's deference to an agency's non-binding position should be proportionate to "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control"). "The fair measure of deference to an agency administering its own statute has been understood to vary with circumstances, and courts have looked to the degree of the agency's care, its consistency, formality, and relative expertness, and to the persuasiveness of the agency's position." *Mead*, 533 U.S. at 228 (*citing Skidmore*, 323 U.S. at 139–40) (internal citations omitted).

## III.   Discussion

Plaintiffs argue that USCIS's decision to deny their I-485 petitions is not in accordance with the law because the decision to revoke the underlying I-140 petition is still "approvable." (Doc. 51-1 at 7). They say that by denying Plaintiffs' I-485 petitions before the appeals period has run on the decision to revoke the underlying I-140 petition, USCIS improperly executed a nonfinal judgment. (*Id.* at 8). Plaintiffs also argue that the only reasonable interpretation USCIS has given to "revocation" in 8 U.S.C. § 1155 is one that stays execution of *all* decisions to revoke immigration visas on appeal. (Doc. 55 at 7). Defendant, in turn, argues that the plain language of the applicable statutes and regulations authorize USCIS to deny a I-485 petition upon a finding of statutory ineligibility, even if a petitioner has an appeal of a supporting I-140 petition pending. (Doc. 54 at 15–17).

1
2
3

Defendant points out that where Congress has intended to stay execution of a decision in the immigration context, it has said so expressly. (*Id.* at 18–19). The Court will address each argument in turn.

### A.  Prohibitions Against Execution of Non-Final Judgments

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

Plaintiffs first contend that denying a I-485 when an I-140 is still approvable is an improper execution of a nonfinal judgment. (Doc. 51-1 at 8). In support of their argument, Plaintiffs cite to an unpublished Sixth Circuit Court of Appeals case that addressed whether garnishment may be executed upon a non-final judgment. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania v. Gilbert*, 36 F.3d 1097 (Table) (6th Cir. 1994). *Gilbert* is not binding on this Court and has only peripheral relevance to this case. Nevertheless, the Court recognizes that in certain contexts, including garnishment proceedings, courts do not allow execution of non-final judgments. This rule, however, does not automatically apply to every situation. *See e.g.*, Fed. R. Civ. P. 62(d) (act of appealing a judgment does not automatically create a stay of the judgment pending appeal); *ACLU v. Masto*, 670 F.3d 1046, 1067 (9th Cir. 2012) (noting that appellant is only entitled to a stay "as a matter of right" when appellant appeals and posts supersedeas bond with district court; otherwise, stay is within discretion of district court). In the absence of an applicable statute or regulation, Plaintiffs argue the AAO has a policy of staying I-485 decisions pending an appeal of a I-140. (Doc. 51-1 at 8). They reference two unpublished AAO decisions in support of this policy and say these decisions show that the rule has been "properly applied by the Administrative Appeals Office to treat the denial of a petition as non-effective when it is still on appeal." (*Id.*)

23
24
25
26
27

AAO issues three types of opinions: non-precedential, adopted, and precedential. AAO Practice Manual, § 3.15. The USCIS, pursuant to 8 C.F.R. § 103.3(c), has expressly stated that non-precedential AAO decisions do "not create or modify agency guidance or practice," and they are only to be applied to the facts of the case before the agency. *See* Policy Memorandum, USCIS, Subject: Precedent and Non-Precedent Decisions of the

28

1    Administrative Appeals Office (AAO).[6]  *See also Garcia-Quintero v. Gonzales*, 455 F.3d

2    1006, 1013 (9th Cir. 2011), *overruled on other grounds by Medina-Nunez v. Lynch*, 788

3    F.3d 1103, 1105 (9th Cir. 2015) (unpublished BIA opinion issued by single member is not

4    entitled to *Chevron* deference); *Herrera*, 571 F.3d at n.7 (affording no "special deference"

5    to AAO's adopted branch office).  Because the opinions should be afforded little to no

6    weight, the Court declines to find that two unpublished agency orders reflect a practice or

7    policy of requiring a stay of I-485 petitions until a final decision is reached on the I-140

8    revocation decision.[7]   Plaintiffs have not established that USCIS is bound by a general

9    non-execution rule pending final judgment on a decision to revoke a I-140 petition.

10          This is especially so given that the relevant statutory language does not limit

11   USCIS's authority to deny an I-485 petition prior to a final decision on an I-140 revocation

12   decision.  *See Schneider v. Chertoff*, 450 F.3d 944, 956 (9th Cir. 2006) ("[I]f the statutory

13   language is clear and unambiguous, the court must give effect to the plain meaning of those

14   words.") (internal quotations omitted).  8 U.S.C. § 1255(a) governing I-485 petitions states

15   that an immigrant's status may be adjusted if, in the agency's discretion and under

16   prescribed regulations: "(1) the alien makes an application for such adjustment, (2) the

17   alien is eligible to receive an immigrant visa and is admissible to the United States for

18   permanent residence, and (3) an immigrant visa is immediately available to him at the time

19   his application is filed."  8 U.S.C. § 1255(a).  The applicable regulatory provision says that

20   "[i]f the record evidence" for a benefit petition like an I-485 application "establishes

21   _____
22   [6]    Available    at    https://www.uscis.gov/sites/default/files/document/memos/PM-602-
     00861_AAO_Precedent_and_Non-Precedent_Decisions_Final_Memo.pdf.

23   [7] USCIS has the discretion to reopen and restore an I-485 petition to pending status. (*See
24   e.g.*, AR, Doc. 53-1 at 10 (notifying Mr. Kompella that because the revocation of his I-140
     petition had been reopened, USCIS would reopen the 2016 I-485 petition and restore it to
     pending status)).   As a result, Plaintiffs were not without recourse to request a stay when
25   their I-485 petitions were denied on January 10, 2018.  Had they wanted to argue that that
     the January 10, 2018, I-485 Denials were premature, or otherwise seek reconsideration of
26   the Denials because Plaintiffs were appealing the I-140 Revocation, they could have done
     so by filing a motion to reopen or reconsider the decision to deny the I-485 petitions. (*See*
27   AR, Doc. 46-7 at 4 (noting that although agency regulations do not provide for appeals of
     I-485 denials, Plaintiffs could file a motion to reopen or reconsider the decision).  Plaintiffs
28   did not.  This Court will not cure Plaintiffs' failure to request a stay pending a final decision
     on the I-140 by rendering the agency's decision to deny the I-485 petitions unlawful.

ineligibility, the benefit request will be denied on that basis."  8 C.F.R. § 103.2(b)(8)(i).

This language shows that to be eligible for adjustment of status, the immigrant's record must show he is eligible to receive an immigrant visa.  8 U.S.C. § 1255(a)(2); 8 C.R.F. § 103.2(b)(8)(i).  In the absence of a statute or regulation enjoining a decision pending a final decision on an underlying visa application, it logically follows that "if the record evidence" shows an immigrant is ineligible, the adjudicator should deny the I-485 petition.  Indeed, where Congress has intended to stay execution of a benefit request until a final decision is made or an appeal process has expired, it has expressly stated as much. *See e.g.*, 8 U.S.C. § 1231(c)(1)(B) (enjoining removal of a stowaway alien until after exhaustion of asylum application appeal).  In denying the I-485 petition here, USCIS explained its reasoning and found that Mr. Kompella was "statutorily ineligible for the requested benefit" under 8 U.S.C. § 1255(a).  (AR, Doc. 46-7 at 1-2; Doc. 53-1 at 2-3). USCIS specified that "the underlying immigrant visa petition's approval was revoked, on notice, and the supporting alien labor certification . . . was invalidated by USCIS due to a finding of fraud or misrepresentation" and that Mr. Kompella "failed to overcome the stated grounds for revocation." (AR, Doc. 46-7 at 2; Doc. 53-1 at 3).[8]  USCIS concluded that the underlying I-140 petition was "not valid and [could not] confer an immigrant visa for purposes of adjusting [Plaintiff's] status to lawful permanent resident."  (AR, Doc. 46-7 at 2; Doc. 53-1 at 3).

Under the plain language of the applicable statutory and regulatory text, it was not unlawful for USCIS to deny Plaintiffs' I-485 petitions on January 10, 2018, upon finding that they were no longer eligible for the underlying immigrant visa on that date.  8 U.S.C. § 1255(a); 8 C.F.R. § 103.2(b)(8)(i) (stating that "[i]f the record evidence establishes ineligibility, the benefit request will be denied on that basis").  Because the record shows that Mr. Kompella did not have an approved I-140 petition on January 10, 2018, the "record

---

[8] USCIS also informed Plaintiffs that because "the underlying Form I-140 petition's approval was revoked for fraud or misrepresentation and the failure to establish eligibility for the sought immigrant visa classification," the I-485 was not valid for "job portability consideration under INA 204(j)."  (Doc. 46-7 at 3).

evidence establishe[d] [his] ineligibility" for adjustment of status. 8 C.F.R. § 103.2(b)(8)(i). Absent express language in § 1255(a) limiting USCIS's authority to execute on a revocation decision, the Court finds that a decision to stay a decision on an I-485 application pending an appeal of a I-140 visa revocation is squarely within the authority that has been delegated to USCIS. *See Negusie v. Holder*, 555 U.S. 511, 517 (2009) ("Judicial deference in the immigration context is of special importance, for executive officials exercise especially sensitive political functions that implicate questions of foreign relations.") (citation and internal quotation marks omitted). USCIS's decision to deny the Plaintiffs' I-485 petitions upon a record of statutory ineligibility was not an unauthorized or arbitrary decision.

### B. Ambiguity of "Revocation" in 8 U.S.C. § 1155

Plaintiffs also contend, for the first time in their Reply,[9] that the term "revocation" in 8 U.S.C. § 1155 is ambiguous because it is unclear "whether the statute is referring to a non-final or final revocation decision." (Doc. 55 at 5–6).

8 U.S.C. § 1155, which governs revocation of visa petitions processed under § 1154, including I-140 petitions, states that the Secretary of DHS may revoke an approved petition "at any time, for what he deems to be good and sufficient cause" and "[s]uch revocation shall be effective as of the date of approval of any such petition." 8 U.S.C. § 1155. Defendant says the plain language of the statute makes clear "that the revocation of an I-140 petition becomes effective upon USCIS's decision to revoke the petition, on notice,

---

[9] In appellate proceedings, arguments raised for the first time in a reply brief are typically considered waived. *Friends of Yosemite Valley v. Kempthorne*, 520 F.3d 1024, 1033 (9th Cir. 2008) ("Arguments not raised by a party in its opening brief are deemed waived."); *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 738 (9th Cir.1986) (a court "will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief"). The Court will consider the new arguments Plaintiffs make in their Reply only to the extent that they are responsive to the arguments Defendant made in its Response. The Court specifically declines to address Plaintiffs' new argument that Immigration and Nationalization Service (INS) General Counsel Opinion 91-23 dated August 13, 1990 ("Genco 91-23") adds support to its argument that USCIS acted unlawfully in denying Plaintiffs' I-485 petitions. Even if not waived, the Court notes that Genco 91-23 only speaks to denials following timely-filed appeals, and thus is ultimately inapplicable here, as Plaintiffs did not timely file an appeal of the decision to revoke their I-140 petition. *See Section III.C., infra.*

notwithstanding the availability of an appeals process." (Doc. 54 at 19).  Plaintiffs argue that "[s]tating that the petition revocation is effective as of the date of the approval of the petition still leaves open the question of whether the statute is referring to a non-final or final revocation decision." (Doc. 55 at 5).  The Court agrees that if Congress intended for "revocation" to only be effective upon a final decision as to the I-140's validity, then USCIS's denial of the I-485 petition was premature.  The Court will therefore assess whether the statutory term "revocation" is ambiguous, and if so, should be credited with the Plaintiffs' or the agency's interpretation.  *Chevron.*, 467 U.S. at 843.

At step one of the *Chevron* analysis, a court asks "whether Congress has directly spoken to the precise question at issue.  If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43.

Here, § 1155 clearly states that USCIS may revoke a visa petition for cause "at any time."  8 U.S.C. § 1155.  On the other hand, the term "revocation" is not defined in the statute or the regulations.  And the statute does not condition the effective date of the revocation by modifying "revocation" with terms like "final" or "final decision."  Plaintiffs therefore argue that it does not appear from the text that Congress has directly spoken to the issue of whether a final decision is required to execute on a revocation decision.  But "[t]o maintain the proper separation of powers between Congress and the executive branch, [a court] must 'exhaust all the traditional tools of construction' before [it] 'wave[s] the ambiguity flag.'" *Medina Tovar v. Zuchowski*, 982 F.3d 631, 634 (9th Cir. 2020) (*quoting Kisor v. Wilkie*, ––– U.S. ––––, 139 S. Ct. 2400, 2415 (2019)).  "[O]nly if . . . the statute is ambiguous after using ordinary tools of construction" does a court need to "ask whether the agency has construed the ambiguity in a permissible way." *Id.*

Tools of statutory construction help resolve any perceived ambiguity over whether Congress intended to limit USCIS's authority to execute on an initial revocation decision.  The dictionary definition of revocation supports Defendant's position.  *See Johnson v. Aljian*, 490 F.3d 778, 780 (9th Cir. 2007) *cert denied*, 128 S. Ct. 1650 (Mar. 17, 2008) (in

determining a word's plain and ordinary meaning, a court should follow "the common practice of consulting dictionary definitions to clarify the [ ] ordinary meaning" of statutory language) (citation, internal quotation marks omitted). "Revocation" is the noun form of the verb "revoke," which means "to annul by recalling or taking back" or "to bring or call back." Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/revoke. Using the dictionary definition of the word, USCIS revoked the previously approved I-140 petition on January 4, 2018. (AR, Docs. 47-2 at 80–91; 47-3 at 1–72). That decision letter states, "Based on the evidence of record, USCIS cannot conclude that the facts in the petition, which includes the labor certification, are true pursuant to INA 204(b). Accordingly, the petition's approval is *revoked*." (AR, Doc. 47-2 at 89) (emphasis added). Once the previously-approved visa petition was annulled, Plaintiffs did not have an approved I-140 petition and thus were not eligible to adjust their statuses when USCIS denied their I-485 petitions on January 10, 2018. When focused solely on the word "revocation," the definitional meaning of the word "revocation" suggests that Congress intended the initial decision to be the operative decision.

Other portions of the INA also show that Congress intended this meaning. *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988) ("A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme . . ."). Unlike other parts of the INA, Congress did not expressly make the revocation of an I-140 petition effective only upon exhaustion of the immigrant beneficiary's appeal rights. *Compare* 8 U.S.C. § 1231(c)(1)(B) (enjoining removal of a stowaway alien until after exhaustion of asylum application appeal); *see also Wong v. Napolitano,* 2010 WL 916274, at *12 (D. Or. Mar. 10, 2010) (holding that Congress's use of "final decision" in some parts of 8 U.S.C. § 1184(n) and "denied" in others was "strong evidence that Congress intended different results from each provision" such that "denied" "means the initial denial and not the decision on appeal"). "It is a well-established canon of statutory interpretation that the use of different words or terms within a statute demonstrates that Congress intended to convey a different meaning for those words." *SEC*

*v. McCarthy*, 322 F.3d 650, 656 (9th Cir. 2003) (citing cases); *see also Medina Tovar*, 982 F.3d at 635 ("One of the most common tools of statutory construction is this: 'Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'") (quoting *Nken v. Holder*, 556 U.S. 418, 430 (2009)).  It follows that where Congress intended to limit the authority of the agency to execute on a benefit request until a "final decision" is made on eligibility, it has stated so expressly.  *Wong*, 2010 WL 916274, at *12.  In other words, if Congress intended for all revocation decisions to be effective only upon exhaustion of the immigrant beneficiary's appeal rights, it knew the words to use.  But its use of different terms in separate sections of the INA, and the absence of stay language in § 1155 in particular, shows that Congress did not intend to limit execution of I-485 decisions until a final decision on a visa revocation was rendered.

Plaintiffs argue against this interpretation by pointing out that USCIS has not interpreted a "revocation" decision to mean the initial decision as to all immigrant visa petitions that may be revoked under § 1155.  (Doc. 55 at 5–7).  They argue the term "revocation" is ambiguous because some regulations clearly state that an initial revocation should not be executed until the appeal process expires.  (*Id.*)  Plaintiffs specifically point to 8 C.F.R. § 1003.6, which stays executions of decisions on visa petitions that are appealable to the BIA, including those that are family-based.  (*Id.* at 5–6).  That section states in relevant part that,

> [a] decision in any proceeding under this chapter from which an appeal to the Board may be taken shall not be executed during the time allowed for the filing of an appeal unless a waiver of the right to appeal is filed, nor shall such decision be executed while an appeal is pending or while a case is before the Board by way of certification.

8 C.F.R. § 1003.6(a).  Plaintiffs recognize that revocations of I-140 petitions are not visa petitions "from which an appeal to the Board may be taken" and thus are not covered by the stay language of § 1003.6(a).  (Doc. 55 at 6).  But they say that "the government cannot possibly interpret the very same language in 8 U.S.C. § 1155 to mean two different things,

based upon whether the petition being revoked is a family or employment based petition."
(*Id.* at 7).  They argue "the only reasonable interpretation of 8 U.S.C. § 1155 is that any
revocation thereunder only is enforceable when the revocation is final."  (*Id.*)

The Court rejects the premise of Plaintiffs' argument, which presumes this Court
should review an agency's rules of procedure for reasonableness. "Subject to constitutional
constraints, an agency has broad discretion in choosing the form of the proceeding that it
will conduct."  *ASSE Intern., Inc. v. Kerry*, 809 F.3d 1059, 1075 (9th Cir. 2015) (citing *Vt.
Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 543–44 (1978)).
"Agencies are 'free to fashion their own rules of procedure and to pursue methods of
inquiry capable of permitting them to discharge their multitudinous duties.'" *Id.* (quoting
*FCC v. Schreiber*, 381 U.S. 279, 290 (1965) (internal quotation omitted)).  USCIS may
have a plethora of policy reasons for limiting execution of decisions to revoke visas
appealed to the BIA and not the AAO.  But Plaintiffs have not advanced any constitutional
concerns over staying decisions on appeal to the BIA versus appeals to the AAO, and in
the absence thereof, the Court will leave the question of whether to stay certain decisions
on appeal to the agency's discretion.  *ASSE Intern*, 809 F.3d at 1075.  *See also Dia v.
Ashcroft*, 353 F.3d 228, 238 (3d Cir. 2003) (en banc) ("The Supreme Court has forcefully
emphasized that '[a]bsent constitutional constraints or extremely compelling
circumstances the administrative agencies should be free to fashion their own rules of
procedure . . . '") (quoting *Vt. Yankee*, 435 U.S. at 543).

The Court also finds it problematic that Plaintiffs raised this argument for the first
time in their Reply brief.  Defendant therefore did not have an opportunity to respond or
explain any differences in regulations on appeals of family and employment-based visas
(one difference, but not the only one, being the stay provision in 8 C.F.R. § 1003.6(a)
regarding visa revocations that are appealable to the BIA).  But in its Response, Defendant
does argue that if the term revocation in § 1155 is considered ambiguous, internal agency
guidance supports the interpretation that an I-485 petition may be denied upon the agency's
initial decision to revoke the underlying I-140 petition.  (Doc. 54 at 18).  Defendant

references a 2003 memorandum from Deputy Executive Associate Commissioner William Yates ("Yates Memorandum"), and a section of the USCIS's Adjudicator's Field Manual to their Response ("Field Manual").  (Docs. 54-1; 54-2).  Although the Court ultimately finds that deference to agency interpretation is unnecessary in light of Congress's clear statutory intent, the Court will briefly address these interpretative documents.

The Yates Memorandum was issued to give guidance to Service adjudicators regarding amendments made to 8 C.F.R. § 245.2(1)(i).  The amendments to § 245.2(1)(i) allowed for a I-485 petition to be filed concurrently with a I-140 petition, and thus possibly receive the visa number of that filing date if ultimately approved.  Previous regulations had required employment-based petitioners to wait to file an I-485 until the I-140 petition had been approved, giving them a less favorable priority number.  (Doc. 54-1 at 1, Memorandum from William Yates, Deputy Exec. Assoc. Comm'r, USCIS, *Procedures for concurrently filed family-based or employment-based Form I-485 when the underlying visa petition is denied* (Feb. 29, 2003)).[10]  The Memo recognized that under the prior regulation, if an I-140 petition was ultimately denied, any subsequent I-485 petition that was filed by the immigrant-employee would be denied as improper.  (*Id.* at 2).  Deputy Commissioner Yates clarified that although a concurrently filed I-485 petition would not be considered "improper" under the amendment, "[s]ervice adjudicators should [] deny the concurrently filed Form I-485 when the underlying visa petition is denied because the applicant has lost the claim to adjustment of status."  (*Id.*)   The Memorandum also states that "[i]f the decision to deny the visa petition is later overturned on appeal, the Service may motion to reopen and reconsider the associated Form[] I-485 . . ."  (*Id.*)  Defendant argues the language of the Memorandum, particularly the language instructing Service officers to *reopen* an associated I-485 petition if the denial of a I-140 is later overturned, directs and contemplates that adjudicators may revoke an I-485 petition prior to the expiration of the I-140 appeal period.

---

[10] *See id.* ("Previously, only immediate relatives and family-based preference cases where the immigrant visa was immediately available could concurrently file a visa petition and an adjustment application.  The interim regulation expanded this provision to include employment-based preference categories.").

Defendants also argue that the section on "Petition Validity" from the USCIS Field Manual further supports the agency's interpretation that a I-485 may be immediately denied upon record ineligibility.  That provision states that "[i]f at any time the USCIS revokes approval of the Form I-140 based on fraud . . . the adjudicating officer may, in his or her discretion, deny the attached Form I-485 immediately."  (Doc. 54-2 at 2).  This guidance speaks to the exact factual circumstance here, as USCIS cited fraud as the rationale for revoking Real Technologies' I-140 visa petition.  (AR, Doc. 46-7 at 2; Doc. 53-1 at 3).  And Defendant points out that this practice is consistent with guidance posted on the agency website, which alerts petitioners that "[f]iling an appeal does not delay any decision in your case from going into the effect or extend a previously set departure date."  (Doc. 54 at 18, citing U.S. Citizenship and Immigration Services, Questions and Answers: Appeals and Motions, available at https://www.uscis.gov/forms/questions-and-answers-appeals-andmotions).

Plaintiffs argue the Yates Memorandum does not speak to the issue here, which they say is whether USCIS is authorized to deny a pending I-485 petition that was filed *after* the underlying visa petition was approved, but which has been subsequently revoked. (Doc. 55 at 8–10).  They say the Yates Memorandum only offers clarification for service adjudicators on concurrently filed petitions, not sequentially filed petitions like Plaintiffs'. (*Id.*)  Plaintiffs also contend that the Yates Memorandum only addresses denials of visa petitions, not revocations of previously-approved visa petitions.  (*Id.*) They argue that "[d]enials and revocations cannot be considered interchangeable—a revocation after all was once an approved petition, and therefore entitled to considerably more deference than a petition which was never approved to begin with."  (*Id.* at 10).  Finally, Plaintiffs argue that neither the Yates Memorandum or Field Manual section on Petition Validity should be afforded any deference, as they are conclusory internal guidance documents and lack the power to persuade under *Skidmore*.  (*Id.* at 9–11).[11]

---

[11] Plaintiffs also encourage the Court to "disregard as arbitrary and capricious" the Yates Memorandum and Field Manual "because neither of them considers important aspects of the problem such as policy alternatives that would have exempted the Kompellas' application from their scope." (Doc. 55 at 11).  Plaintiffs compare the Yates Memorandum

Although the Court agrees that the Yates Memorandum speaks to a different circumstance than the factual situation here, it does support the existence of agency practice of immediately denying an I-485 petition where the record shows ineligibility, despite the existence of an appeals process.  Yates Memorandum at 2 (noting that if the denial is later overturned on appeal, USCIS may then reopen the I-485).  Moreover, Plaintiffs offer no support or explanation as to why a revoked visa petition should be afforded more deference than a denied visa petition.  The regulations afford both types of decisions an appeal process.  *See* 8 C.F.R. § 103.3 (governing appeals process for denials of I-140 petitions) and 8 C.F.R. § 205.2(d) (governing appeal process for revocations on notice of I-140 petitions).  And in both cases, the agency provides notice to the affected parties of the agency's intent to deny or revoke and an opportunity to respond.  *See* 8 C.F.R. §§ 103.2(b)(8)(iv), § 205.2(c).  The Court finds that the Yates Memorandum's focus on denials of immigrant visas as opposed to revocations of immigration visas is immaterial. Both the Yates Memorandum and Field Manual suggest the agency has a policy of denying I-485 petitions upon a finding of record ineligibility, notwithstanding the existence of an appeal process for a revoked I-140 petition.

Ultimately, however, the Court does not defer any special deference to the Yates Memorandum or Field Manual because application of traditional tools of statutory construction clearly reflect the intent of Congress regarding any perceived ambiguity as to the meaning of "revocation" in § 1155.   "Where, as here, the canons supply an answer, *Chevron* leaves the stage." *Epic Sys. Corp.*, 138 S. Ct. at 1630 (internal quotation omitted).  As noted, where Congress intended for USCIS to stay execution of a decision pending

---

to DHS Secretary Elaine C. Duke's decision to rescind the Deferred Action for Childhood Arrivals ("DACA") program, which was found arbitrary and capricious in *Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 140 S. Ct. 1891, 1913 (2020).  (*Id.* at 11–13). To the extent Plaintiffs are alleging that the Yates Memorandum is arbitrary and capricious because it rescinded "what was apparently the existing practice of not denying applications for adjustment of status merely because the supporting employment based petition had been denied, unless and until the denial was final," the Court finds Plaintiffs have waived this argument by raising it for the first time in their Reply.  However, the Court also finds that because Congress's intent is clear in this circumstance, it unnecessary to engage in an analysis whether the Yates Memorandum reflects either a policy or a change in policy on stays pending final decisions on employment-based visa revocation decisions.

appeal, it has done so expressly.  In *Herrera*, for example, the Ninth Circuit Court rejected plaintiffs' contention that Congress implicitly amended USCIS's authority to revoke an I-140 petition under § 1155 when it passed a statutory provision allowing immigrants with long-delayed pending I-140 petitions more job flexibility.  571 F.3d at 888.  In doing so, the court reasoned,

> [h]ad Congress intended to constrain the agency's revocation authority, it easily could have expressed that intent clearly.  For example, it could have stated so explicitly in the [job] Portability Provision, or it could have amended 8 U.S.C. § 1155, which provides that the agency may revoke its previous approval of a petition "at any time" for "good and sufficient cause.

*Id.*  As pointed out by the *Herrera* court, Congress had not taken either of these actions. The court accordingly court held that the plain language of § 1155, authorizing the USCIS to revoke a previously-approved I-140 petition for cause "at any time," was left unaltered. *Id.*  The same reasoning applies here.  Nothing in the language of § 1155 reflects that Congress intended to limit USCIS's authority to deny an I-485 petition until a final decision on an I-140 revocation is rendered.  Had Congress wanted to do so, "it easily could have expressed that intent clearly."  *Id.*  Section 1155 affords USCIS the authority to revoke an I-140 petition, and nothing therein requires that the agency stay the revocation decision until an appeal has been exhausted.  Consequently, the Court declines to find that USCIS's denials of Plaintiffs' I-485 petitions were not in accordance with the law.

### C.   Even if USCIS Erred, Plaintiffs Cannot Establish Prejudice

Alternatively, even if USCIS's decision to deny Plaintiffs' I-485 petitions was premature under the theory that January 4, 2018, I-140 Revocation decision was not yet final, under the facts of this case, Plaintiffs cannot establish they were prejudiced by the premature denial.  *See Safari Aviation Inc. v. Garvey*, 300 F.3d 1144, 1150 (9th Cir. 2002) ("We will not usually overturn agency action unless there is a showing of prejudice to the petitioner.").

Plaintiffs' appeal of the January 4, 2018, I-140 Revocation decision was ultimately rejected by USCIS as untimely.  (AR, Doc. 47-3 at 72).  The decision on the January 4, 2018, I-140 Revocation thus became final 18 days after the date of that decision.  (*Id.*

(noting that if a properly filed appeal is not received by this date, "this decision will become final").  USCIS denied Plaintiffs' I-485 petitions on January 10, 2018, unquestionably before the Revocation decision became final on January 22, 2018.  However, even assuming Defendant erred in denying the I-485 petitions on January 10, 2018, given that the January 23, 2018, Appeal was ultimately rejected as untimely, and thus became final on January 22, 2018, the premature denial caused no prejudice to Plaintiffs.  Even under Plaintiffs' theory, once the decision on the I-140 became "final" for record eligibility purposes, Plaintiffs were no longer eligible to adjust their statuses.

Plaintiffs seek to avoid this conclusion by arguing that USCIS's June 19, 2020, decision to reopen the January 4, 2018, I-140 Revocation rendered the decision "non-final" again.  (Doc. 55 n.2).  They say their pending appeal of the subsequent decision to deny the motion to reopen makes the January 10, 2018, I-485 Denials improper.  This argument is without merit.  8 C.F.R. §103.3(a)(2)(v)(B)(2) required the agency to treat Plaintiffs' untimely appeal as a motion to reopen in these circumstances. *Id*. ("If an untimely appeal meets the requirements of a motion to reopen as described in § 103.5(a)(2) of this part. . . the appeal **must** be treated as a motion, and a decision must be made on the merits of the case.") (emphasis added).  Plaintiffs offer no legal authority for the proposition that a pending motion to reopen renders a decision non-final and stays execution of the same.  To the contrary, the regulations clearly state the effect a motion to reopen (versus a timely-filed appeal) has on the execution of a decision.  8 C.F.R. § 103.5(a)(1)(iv) states:

> Effect of motion or subsequent application or petition. Unless the Service directs otherwise, the filing of a motion to reopen or reconsider or of a subsequent application or petition **does not stay the execution of any decision in a case** or extend a previously set departure date.

8 C.F.R. § 103.5(a)(1)(iv) (emphasis added).  In light of this regulatory language, there is no merit to Plaintiffs' argument that USCIS unlawfully denied the I-485 petitions on the grounds that the January 4, 2018, I-140 Revocation decision became "non-final" when USCIS treated the untimely appeal as a motion to reopen.  § 103.5(a)(1)(iv) states that a motion to reopen will not stay the execution of such a decision unless the agency otherwise

directs.   8 C.F.R. § 103.5(a)(1)(iv); *see also Statewide Bonding, Inc. v. U.S. Dep't of Homeland Sec.*, 2019 WL 2076762, *3 (D.D.C. May 10, 2019) (rejecting the argument that the agency's acceptance of plaintiffs' untimely appeal as a motion to reopen rendered the agency's prior decision non-final).

Plaintiffs' Appeal of the January 4, 2018, Revocation decision was untimely, and "final" by January 22, 2018.  Thus, even assuming arguendo, USCIS prematurely denied Plaintiffs' I-485 petitions before the decision on the I-140 was final, Plaintiffs cannot show they were prejudiced by the decision.

**IV.    Conclusion**

For the foregoing reasons, Plaintiffs have not established that USCIS did not act in accordance with the law in denying their I-485 petitions.  The Motion for Summary Judgment is therefore denied.  There being no further justiciable issues before the Court, this case is dismissed.  Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion for Summary Judgment (Doc. 51) is **DENIED** and judgment is entered in favor of Defendant.

**IT IS FURTHER ORDERED** there being no issues before the Court, the Clerk is kindly directed to terminate this matter.

Dated this 31st day of August, 2021.

Honorable Diane J. Humetewa
United States District Judge